USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/21/2023____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

EDWIN ARAUJO,                                    :
                                                 :
                                  Petitioner,    :        22-CV-4056 (VEC)
                                                 :        17-CR-438 (VEC)
                -against-                         :
                                                 :        MEMORANDUM
UNITED STATES OF AMERICA,                        :        OPINION & ORDER
                                                 :
                                  Respondent.    :

-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

      Edwin Araujo ("Petitioner"), a member of the "Hot Boys," was indicted in 2017 for

racketeering and other crimes. Mr. Araujo pled guilty to one count of racketeering conspiracy in

full satisfaction of the charges in the Indictment. *See* Plea Tr. 7:25–8:4, Dkt. 382. On May 2,

2019, this Court sentenced Mr. Araujo to 125 months' imprisonment to run consecutively to a

sentence that Mr. Araujo was then serving in a related case. *See* Sentencing Tr. 37:15–20, Dkt.

533. Mr. Araujo appealed his sentence, and, on June 8, 2021, the Second Circuit dismissed the

appeal as barred by the appeal waiver contained in his plea agreement. *See* Dkt. 82, Case No.

19-1430.

      On May 16, 2022, Mr. Araujo filed a petition to vacate, set aside, or correct his

conviction pursuant to 28 U.S.C. § 2255, arguing that he received ineffective assistance of

counsel. *See* Mot., Dkt. 700. The Government opposes Mr. Araujo's § 2255 petition. *See* Opp.,

Dkt. 723. For the reasons discussed below, Mr. Araujo's § 2255 petition is DENIED.

## BACKGROUND

      In the so-called "Pharmacy Burglaries Case," Mr. Araujo pled guilty to conspiracy to

burglarize pharmacies in violation of 18 U.S.C. § 2118(d), and narcotics conspiracy in violation

of 21 U.S.C. § 846. *See* Judgment, Dkt. 407, No. 13-CR-811 (ALC). On May 6, 2016, Judge

Carter sentenced Mr. Araujo to 84 months' imprisonment on each count, concurrent.  *See id.*
While serving that sentence, on July 12, 2017, Mr. Araujo was indicted in the instant case for
conspiracy to violate the racketeering laws (18 U.S.C. § 1962(d)) (Count One); distribution and
possession with intent to distribute heroin, cocaine, and marijuana in violation of 21 U.S.C. §
846 (Count Three); and using and carrying firearms in violation of 18 U.S.C. § 924(c) (Count
Five).  *See* Indictment, Dkt. 3, No. 17-CR-438 (VEC).  The charges in the indictment
collectively carried a minimum sentence of 17 years (seven of which had to be consecutive to
any other sentence) and a maximum of life.

On September 6, 2018, Mr. Araujo entered a guilty plea to Count One of the Indictment
pursuant to a plea agreement with the Government.  *See* Order, Dkt. 351; Plea Tr. 7:25–8:4; Plea
Agreement, Dkt. 723-2.  When he signed the plea agreement, Mr. Araujo acknowledged a
proposed sentencing guidelines range of 100 to 125 months' imprisonment.  *See* Plea Agreement
at 4; Pre-Sentencing Report ("PSR") ¶ 10, Dkt. 417.  At the plea hearing, Mr. Araujo
acknowledged that he understood that by pleading guilty, he faced a maximum sentence of 20
years' imprisonment.  *See* Plea Tr. 9:11–19.  Mr. Araujo confirmed that he had discussed the
case and "the consequences of pleading guilty" with his attorney, Aaron Mysliwiec, *id.* 4:14–17,
and that he was "satisfied" with Mr. Mysliwiec's representation, *id.* 4:18–20.  Mr. Araujo also
said that he had spoken with his attorney about how the sentencing guidelines apply in his case
and understood that any attempt to estimate or predict the length of his sentence could be wrong;
he acknowledged that it was entirely up to the Court to determine his sentence.  *See id.* 10:25–
12:19.  He acknowledged that the Court had the discretion to impose a sentence outside the
guidelines range.  *See id.*  Mr. Araujo confirmed that he was "pleading guilty and of [his] own
free will."  *Id.* 21:24–22:1.

Mr. Araujo was scheduled to be sentenced on February 14, 2019.  Prior to sentencing, however, Mr. Araujo was caught running a substantial drug- and cell-phone-smuggling operation from prison.  *See* Dkt. 474 at 5 (Government's Sentencing Submission); Dkt. 499 (Feb. 14, 2019 Hearing Transcript).  The parties appeared for the scheduled sentencing and discussed an adjournment to allow Mr. Mysliwiec to confer with his client to determine "how [Mr. Araujo] wants to deal with this and what representation [Mr. Mysliwiec] should make to the Court."  Feb. 14, 2019 Hearing Tr. 8:1–6.  Mr. Mysliwiec inquired about the potential impact Mr. Araujo's prison conduct might have on the Court's ultimate sentencing decision.  The Court emphasized that "[t]he fact that [Mr. Araujo] was committing crimes in jail including between his guilty plea and today is a significant fact," and that such conduct "is highly material to the sentence that the Court is going to impose."  *Id.* 8:9–9:7.  Mr. Araujo has never disputed the Government's allegations about his conduct in prison.

Mr. Araujo was sentenced on May 2, 2019.  *See* Sentencing Tr., Dkt. 533.  Mr. Araujo confirmed at the hearing that he had read the PSR and discussed it with his lawyer.  *See id.* 7:21–25.  He again confirmed that he was satisfied with Mr. Mysliwiec's representation.  *Id.* 5:1–3.  The Court noted that Mr. Araujo was slated to be released in 2020 from the sentence he was then serving as a result of his conviction in the Pharmacy Burglaries case.  *See id.* 27:18–28:11.  After considering the parties' sentencing submissions, including submissions pertaining to Mr. Araujo's illicit conduct in prison, the Court sentenced Mr. Araujo within the guidelines range to 125 months' imprisonment to run consecutive to his sentence in the Pharmacy Burglaries Case.  *See id*. 37:15–20.  The Court noted that had Mr. Araujo not been operating a drug- and cell-phone-smuggling operation from prison, his sentence would have been substantially lighter.  *Id*. 37:2–14.

Mr. Araujo, represented by Mr. Mysliwiec, appealed the Court's imposition of a consecutive rather than concurrent sentence. *See* Notice of Appeal, Dkt. 532. On June 8, 2021, the Second Circuit granted the Government's motion to dismiss the appeal because Mr. Araujo had waived his right to appeal pursuant to the plea agreement. *See* Mandate, Dkt. 617.

On May 16, 2022, Mr. Araujo filed a § 2255 petition to vacate his guilty plea. *See* Mot., Dkt. 700. In the petition, Mr. Araujo alleges that his attorney, Mr. Mysliwiec, provided ineffective assistance of counsel by materially misrepresenting the terms of his likely sentence, "and but for such material misrepresentation, Petitioner would never have entered a plea of guilty." Mot. at 9. Mr. Araujo further argues that his plea was "involuntary, unknowing and unintelligent," because counsel "directed Petitioner to make statements that were inconsistent with the facts during the plea allocution." *Id.* Finally, Mr. Araujo argues that counsel "failed to object to and/or appeal from the lack of a factual basis for the guilty plea." *Id.* For the reasons discussed below, Mr. Araujo's § 2255 petition is denied.[1]

## DISCUSSION

The Court notes at the outset that Mr. Araujo is proceeding *pro se* and that "the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).[2]

Under 28 U.S.C. § 2255, a petitioner "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Relief under § 2255 is available

---

[1] Mr. Araujo has failed to respond to the Government's opposition to his Petition, despite being granted an extension *sua sponte* to respond by December 31, 2022. *See* Dkt. 758. As of the date of this opinion, no reply has been filed.

[2] Based on the quality of the petition, the Court suspects that Mr. Araujo may have had legal assistance drafting it. The Court will, nevertheless, treat it as a *pro se* petition.

"only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).  "As a general rule § 2255 petitioners may not raise on collateral review a claim previously litigated on direct appeal." *Abbamonte v. United States*, 160 F.3d 922, 924 (2d Cir. 1998).  "The 'mandate rule' ordinarily forecloses relitigation of all issues previously waived by the defendant or decided by the appellate court." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002).

Mr. Araujo raises two arguments to support his claim of ineffective assistance of counsel: first, that his attorney materially misrepresented the manner in which his sentence would be executed by promising that it would run concurrent with rather than consecutive to the sentence imposed in the Pharmacy Burglaries case; and second, that his attorney coerced Mr. Araujo to misrepresent the facts when he allocuted to the commission of the crime.  Mr. Araujo argues that, but for his counsel's misrepresentations, he would have taken his chances at trial and that the guilty plea would not have been accepted by the Court.  *See* Mot. at 8–9.

## I.    Mr. Araujo's Counsel Was Not Ineffective

A claim for ineffective assistance of counsel will be granted only if a petitioner can show: (1) that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that he was prejudiced by his counsel's deficient performance.  *Strickland v. Washington*, 466 U.S. 668, 687–96 (1984).  This two-prong test is difficult to satisfy.  *United States v. Shi Hui Sun*, 2013 WL 1947282, at *4 (S.D.N.Y. May 8, 2013) (an ineffective assistance of counsel claim "is a difficult showing to make, as courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case" (cleaned up)).  To successfully claim ineffective assistance of counsel, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).  "A court need not address both prongs of the *Strickland* test; if either fails, the entire claim fails." *Grant v. United States*, 725 F. App'x 76, 77 (2d Cir. 2018) (summary order).

The two-part *Strickland* standard applies to an ineffective assistance of counsel claim made following a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  Where a petitioner "is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  In the plea bargain context, to be entitled to relief, the petitioner must demonstrate a reasonable probability that rejecting the plea bargain "would have been rational under the circumstances," *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010), or that "he would have litigated a meritorious . . . defense" had he rejected the plea, *Kovacs v. United States*, 744 F.3d 44, 53 (2d Cir. 2014).  To demonstrate prejudice, "the defendant must show more than that the unprofessional performance merely had some conceivable effect;" to "satisfy the reasonable probability test, however, a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (cleaned up).

### A.      Mr. Mysliwiec Was Not Ineffective in Recommending Mr. Araujo Plead Guilty

Mr. Araujo argues that his counsel "advised that if Petitioner accepted the Government's plea offer, the district court was certain to run any term of imprisonment imposed concurrent to his then-undischarged related federal sentence." Mot. at 2.  This claim fails.

When a "defendant's specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty, . . . the issue is whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any difference in his decision to enter a plea." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (citing *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1999)).

Mr. Mysliwiec, in a sworn affidavit, asserts that he does "not recall ever advising Mr. Araujo that the [C]ourt was certain to run any term of imprisonment concurrent to his then-undischarged federal sentence;" he only advised that he "would argue for a concurrent sentence and for a downward variance," as it "is against [his] practice to promise any federal criminal defendant what a judge will do at sentencing because the law is clear that only the judge may determine the sentence." Mysliwiec Aff. ¶ 4, Dkt. 723-1.

The record corroborates Mr. Mysliwiec's assertion: during a court appearance that had been scheduled as a sentencing hearing, Mr. Mysliwiec asked the Court specifically about its "judicial approach" with respect to a defendant's alleged misconduct while incarcerated. *See* Feb. 14, 2019 Hearing Tr. 13:12–15.  Mr. Mysliwiec noted that, as it related to one of Mr. Araujo's co-defendants, who "had some very serious conduct in BOP custody as well," the Court took that conduct into account and sentenced the co-defendant to an additional "48 months consecutive to what he'd gotten before." *Id.* 9:11–20.  Mr. Mysliwiec continued to press the

Court, for Mr. Araujo's benefit, on the impact a *Fatico*[3] hearing could have on the Court's sentencing decision. *See id.* 10:5–13:17. The Court responded it would consider all of the information that it learned at such a hearing, good and bad. *Id.* 13:18–14:11. The Court also emphasized that "the reason that this [post-indictment conduct] is significant . . . is that this defendant stood up in front of Judge Carter less than three years ago and said he was a changed man." *Id.* 12:18–21. That Mr. Araujo continued to "thumb[] his nose at the law and . . . to engage in criminal conduct in jail" gave this Court "reason to believe that the prior sentence has [not] had the appropriate deterrent [e]ffect" on Mr. Araujo. *Id.* 12:24–13:2.

Even if Mr. Mysliwiec did advise Mr. Araujo that his sentence would be concurrent to his then-current sentence, that advice would not constitute ineffective assistance of counsel — the dispositive issue is whether Mr. Araujo was aware of his sentencing possibilities. *See Arteca*, 411 F.3d at 321. There is no question that Mr. Araujo was aware of the possibility that the Court could impose a consecutive, rather than concurrent, sentence. Before accepting his guilty plea, the Court warned Mr. Araujo: "nobody can give you any assurance of what your sentence will actually be," nor could anyone, not even the Court, "predict what your sentence will be." Plea Tr. 12:3–12. Mr. Araujo affirmed his understanding of these warnings while under oath.

Moreover, Mr. Araujo's plea agreement provided that his "waiver [of appeal] applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion" of his then-undischarged sentence. Plea Agreement at 6. Mr. Araujo's sworn testimony at his plea allocution unequivocally demonstrates that he understood that the Court had sole discretion to determine his sentence and that no one had made

---

[3]   A *Fatico* hearing was being discussed as a possibility if Mr. Araujo were to challenge the Government's allegations about his misconduct in prison, including that he was running a drug- and cell phone-smuggling operation and had amassed nearly $25,000 in his commissary account as proceeds from illicit activities in prison. Feb. 14, 2019 Hearing Tr. 8:9–9:7.

any promise to him of what his sentence would be.  Plea Tr. 13:20–15:8.  *See United States v. Murphy*, 2022 WL 2110685, at *6 (S.D.N.Y. May 16, 2022) ("The Court is entitled to rely upon the defendant's sworn statements, made in open court, that he understood the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw the plea, and understood that he was waiving his right to appeal a sentence within the stipulated Guidelines range.") (citing *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001) (cleaned up)).

Because Mr. Araujo is unable to show that Mr. Mysliwiec's performance was objectively deficient, he cannot satisfy the first prong of the *Strickland* test.

### B.    Mr. Araujo's Guilty Plea Was Knowing and Voluntary and Supported by an Adequate Factual Basis

Mr. Araujo further claims that he "was directed by his attorney to make specific statements that were inconsistent with the facts, so as to ensure that the Court would accept the guilty plea being tendered."  Mot. at 6.  Specifically, Mr. Araujo claims that he was coerced to admit that he "expected someone to be at the gambling location" (the location of the robbery), "when in fact [he] did not."  *Id.* at 7.  Mr. Araujo argues that "[b]ut for counsel's intervention in the plea allocution, and his directive to Petitioner to make statements that were inconsistent with the facts, Petitioner would not have entered a plea of guilty and the Court would not have accepted the guilty plea because it was devoid of a factual basis."  *Id.*  Again, the record belies Mr. Araujo's assertions.

During his allocution, Mr. Araujo admitted that he was a "lookout" for the Hot Boys' attempted robbery of someone who "operated a gambling spot."  Plea Tr. 18:3–21.[4]  When asked what he understood "the people who were going to rob the gambling location . . . were going to

---

[4]      Mr. Araujo appears to suggest that he did not adequately allocute to RICO conspiracy but instead only admitted participating in the predicate offenses.  Mot. at 11.  For the reasons articulated by the Government in its brief, Opp. at 15 n.1, Mr. Araujo adequately admitted that he participated in a RICO conspiracy.

do," Mr. Araujo said that, to his knowledge, "there was not supposed to be nobody there."  *Id.*
18:22–19:6.  When the Court pressed Mr. Araujo further, he confirmed that he believed at the
time of the robbery that no one would be present, which, as the Court responded, is not a
robbery.  *See id.* 19:3–10.  Moments later, after conferring with counsel, Mr. Araujo clarified
that he knew at the time that it was possible that someone would be at the location of the
robbery.[5]

In the eight months between Mr. Araujo's September 6, 2018 guilty plea and his May 2,
2019 sentencing, Mr. Araujo appeared before this Court at least four times.  *See* Dkts. 382, 499,
520, 533.  Not once during any of those appearances did Mr. Araujo contest that he knew
someone might be present at the location of the robbery and, if someone were present, that the
plan was to rob him.

Mr. Araujo did, however, consider a change of counsel.  *See* Dkt. 487.  On February 27,
2019, approximately two weeks after lengthy, on-the-record discussions of the possible impact of
Mr. Araujo's prison smuggling operation on his sentence in this case, Mr. Araujo complained
that be believed Mr. Mysliwiec "gave him ineffective assistance . . . regarding the plea and what

---

[5]     After conferring with counsel, Mr. Araujo apologized and the following exchange took place:

> THE COURT: What was your understanding of what was going to happen at the gambling
> location?
> THE DEFENDANT: It was supposed to be a robbery.
> THE COURT: What do you mean by that?
> THE DEFENDANT: There was supposed to be somebody there or not there possibly.
> THE COURT: You didn't know whether there was going to be anybody there or not; is that right?
> THE DEFENDANT: Yes, yes.
> THE COURT: If there was somebody there, what were the people who went into the location
> going to do? Were they going to ask nicely for the money?
> THE DEFENDANT: Yes, they was going to ask nicely.
> THE COURT: Are you serious? They were going to go in and say, "Would you please give me
> your money?" Or were they going to pull a gun on them and say, "Give me your money."
> THE DEFENDANT: No, they was going to pull a gun and say give me your money.

Plea Tr. 19:11–20:5.

would potentially happen at a sentencing as part of that plea and sentencing process." Feb. 27, 2019 Tr. 3:21–4:6. Mr. Araujo was appointed a second, independent attorney to advise him whether to persist in that claim and to request a change of counsel. *Id.* 4:21–5:9; *see also* Dkts. 491, 507. Ultimately, Mr. Araujo opted to stay with Mr. Mysliwiec, and, under oath, confirmed that he was satisfied with Mr. Mysliwiec's performance and did not wish to withdraw his guilty plea. Mar. 13, 2019 Tr. 2:15–3:17, Dkt. 561.

Accordingly, Mr. Araujo's sworn statements to this Court refute any suggestion that he was coerced to plead guilty or to misstate the factual basis for his guilty plea. To the contrary, Mr. Araujo's plea allocution demonstrates that there was an adequate, factual basis for the plea, and that it was tendered knowingly and intelligently.

## II.    Counsel's Performance Did Not Prejudice Mr. Araujo

Because Mr. Araujo has not satisfied the first prong of *Strickland*, the Court need not address the second prong. *Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."). The Court notes, however, that even if Mr. Araujo had demonstrated that counsel's performance fell below the standard of objective reasonableness, the § 2255 petition would still be denied because Mr. Araujo has failed to satisfy the second prong: he has not shown that he was prejudiced as a result of his attorney's performance. This prong is not satisfied unless a petitioner can affirmatively prove prejudice by showing "that there is a 'reasonable probability' that, but for the deficiency, 'the result of the proceeding would have been different.'" *Clark v. Stinson*, 214 F.3d 315, 321 (2d Cir. 2000) (quoting *Strickland*, 466 U.S. at 694). In the plea bargain context, as is relevant here, the "petitioner must convince the court that a decision to reject the plea bargain would have been rational under the

circumstances," *Padilla*, 559 U.S. at 372, or "that he would have litigated an available defense," *Kovacs*, 744 F.3d at 52.

Mr. Araujo claims that he "would have insisted on proceeding to trial" but for his attorney's alleged misrepresentation about whether his sentence would run concurrent with or consecutive to his prior sentence.  Mot. at 11.  But that choice is not convincingly rational: Mr. Araujo's plea agreement capped his sentencing exposure at 20 years, thus avoiding the possibility of a much longer sentence, up to and including a life sentence.  As the Court advised Mr. Araujo when, prior to sentencing, he was contemplating accusing his attorney of ineffective assistance of counsel, the Court would "be hard-pressed" to conclude that he'd received ineffective assistance of counsel when, but for the plea bargain negotiated by his attorney, he was facing a mandatory minimum of 17 years (seven of which had to be consecutive to any other sentence, including his Pharmacy Burglaries sentence) and a maximum of life in prison.  *See* Feb. 27, 2019 Hearing Tr. 4:7–20.  Mr. Araujo fails to demonstrate that it would have been rational to ignore his counsel's advice to plead guilty and instead risk a sentence substantially in excess of 20 years, nor has he "advanced any basis for doubting the strength of the government's case against him."  *Chhabra v. United States*, 720 F.3d 395, 408 (2d Cir. 2013).

For these reasons, Mr. Araujo's allegations that Mr. Mysliwiec provided ineffective assistance of counsel satisfies neither prong of the *Strickland* test.[6]

## CONCLUSION

For the foregoing reasons, Mr. Araujo's claims of ineffective assistance of counsel are meritless, and because he fails to demonstrate any constitutional error or fundamental defect, his

---

[6]     Because the Court finds that Mr. Araujo's guilty plea was entered knowingly and intelligently and that there was an adequate factual basis to support it, Mr. Mysliwiec's "fail[ure] to object to and/or appeal from the lack of a factual basis for the guilty plea" cannot constitute ineffective assistance of counsel because Mr. Araujo was not prejudiced by that decision.  *See* Mot. at 9.

§ 2255 petition is DENIED.  Because Mr. Araujo has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue.  28 U.S.C.§ 2253.  The Court further certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and permission to proceed *in forma pauperis* is therefore denied.  The Clerk of Court is respectfully directed to terminate the open motion at docket entry 700.  The Clerk is further directed to mail a copy of this opinion to Mr. Araujo, Reg. No. 69460-054, at FCI Oakdale I, 1507 East Whatley Road, Oakdale, LA 71463, and to note the mailing on the docket.

**SO ORDERED.**

**Date:  March 21, 2023**
          **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**